**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KIMBERLY DANIELS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-7155** |
| | : | |
| **LETITIA SANTARELLI, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**COSTELLO, J.** **OCTOBER 16, 2026**

Plaintiff Kimberly Daniels initiated this *pro se* civil rights action asserting violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*, against Defendants Letitia Santarelli, Maria A. Pugliese, and Shannon S. Santos in their official capacities as ADA Coordinators employed by the Pennsylvania state courts. Daniels also moved to proceed *in forma pauperis* and for a temporary restraining order and preliminary injunction. For the following reasons, the Court will grant her motion to proceed *in forma pauperis* and dismiss the Complaint. Daniels's motion for temporary restraining order and preliminary injunction will be denied.

## I. FACTUAL ALLEGATIONS[1]

Daniels identifies herself as "an individual with disabilities protected by Title II of the ADA, including Autism Spectrum Disorder, ADHD, and PTSD." (Compl. at 2.) Her disabilities "affect [her] executive functioning, working memory, processing of dense written information, and her ability to manage multiple complicated and time-sensitive procedural requirements without reasonable accommodations." (*Id.*) On April 22, 2026, Daniels "submitted a formal

[1] The factual allegations set forth in this Memorandum are taken from the Complaint ("Compl.") (ECF No. 2) and attached exhibits (ECF No 2-1). The Court adopts the sequential pagination assigned to all pleadings by the CM/ECF docketing system.

ADA grievance to Defendant Shannon S. Santos after [the] police were called when [she] was attempting to obtain a reasonable accommodation at the Montgomery County Court of Common Pleas." (*Id.* at 5.) The police officer told Daniels that she did not have to comply with the ADA. (*Id.*) Daniels alleges that "[t]he grievance process did not result in a resolution that provided [her] with the accommodation she needed or addressed the systemic problem." (*Id.* at 6.) The police were called a second time on June 16, 2026, by court staff while Daniels was "at the exact same courthouse requesting a reasonable accommodation." (*Id.*) She claims the "existing internal grievance process has proven completely ineffective at resolving accommodation access problems or preventing recurring barriers." (*Id.*)

Daniels next submitted an ADA accommodation request on July 30, 2026, to the First Judicial District of Pennsylvania for "electronic communication and the ability to submit and receive court documents by email because her disabilities make it difficult to reliably process and track complicated court procedures through ordinary in-person and paper-based processes." (*Id.* at 4.) Defendant Maria A. Pugliese acknowledged her request "but instructed her to include the court date and resubmit it," which Daniels did the following day. (*Id.* at 5.) Pugliese forwarded her accommodation request to Family Court, and Daniels was directed by court staff to the incorrect location for help. (*Id.*)

Daniels attached the referenced email communications with Pugliese and other court staff to her Complaint. (*See* ECF No. 2-1 at 2-8.) Her email requesting her accommodation requests states:

> I am filing an emergency application in person today, I respectfully request the following reasonable accommodations:
>
> 1. To be informed of the estimated amount of time it will take for my emergency filing to be reviewed and for me to see a judge, if that information is available.

> 2. If the anticipated wait exceeds one hour, permission to wait in my vehicle and receive a phone call or text message when I am needed, so that I can promptly return to the courthouse.
> 3. If possible, expedited processing of my emergency filing as a reasonable accommodation to reduce the effects of prolonged waiting in a crowded courthouse environment.
>
> Prolonged waiting in crowded public areas can cause sensory overload, increased anxiety, difficulty processing information, and can substantially limit my ability to effectively participate in court proceedings[.]
>
> These accommodations would enable me to access the court's services on an equal basis while minimizing the disability-related barriers caused by extended waiting and sensory overload.
>
> Thank you[.]

(*Id*. at 3.) As alleged, Pugliese informed Daniels that she would be forwarding her request to the Family Court and they would reach out after reviewing her request. (*Id*. at 4.) Daniels responded with a supplement to her request, asking that her emergency motion be delivered directly to the judge, or for our staff to confirm it has been sent to the judge for immediate review. (*Id*.) Pugliese again confirmed her request was sent to the Family Court "for handling" and would send them her supplemental email. (*Id*.) Daniels also emailed an attachment of her emergency motion, which Pugliese confirmed would need to be filed in the Family Court. (*Id*.) Daniels responded with complaints she experienced with the court staff while trying to file her emergency motion, and Pugliese indicated her emails were sent to the Family Court. (*Id*. at 4-6.) She continued to send emails complaining about court staff and requested an ADA grievance form; Pugliese then directed her to where the form was located on the court website. (*Id*. at 6-7.) Daniels alleges on August 26, 2026, she renewed her accommodation request "for email service of orders, advance notice of filing deficiencies, and brief extensions" and gave notice that "she would pursue federal court remedies under Title II of the ADA if accommodation barriers persisted." (Compl. at 5.) She attached this request to her Complaint. (*See* ECF No. 2-1 at 7-8.)

Daniels next alleges she "has an active appeal in the Superior Court of Pennsylvania, Docket No. 2141 EDA 2026, involving a time-sensitive custody matter." (Compl. at 3.) She submitted an ADA accommodation request on August 6, 2026, concerning that appeal and "requested email access to case documents, expedited processing of a transcript because of the Children's Fast Track nature of the appeal, and email notification of case updates and filing deficiencies." (*Id.*) Defendant Letitia Santarelli, a Pennsylvania Superior Court ADA Coordinator, responded to her email and told Daniels that the access code had been mailed to the address listed on the docket. (*Id.* at 4.) Daniels replied, explaining that because the address was "protected under Violence Against Women Act ("VAWA") confidentiality requirements," she could not reliably receive mail at that address and requested electronic access through her PACFile account. (*Id.*) She claims Santarelli did not provide the requested accommodation or explain why it could not be provided. (*Id.*) Daniels subsequently notified Santarelli on August 26, 2026, that she had a deadline for a case in New Jersey on the same date as her Pennsylvania case deadline, "severely straining her executive functioning and creating a direct processing barrier." (*Id.*)

Daniels attached the referenced email communications with Santarelli to her Complaint. (*See* ECF No. 2-1 at 11-16.) The emails reflect that after Daniels explained the issue with mailing the access code, Santarelli received permission to deviate from the court policy as a one-time exception to provide her the access code via phone after she verified her identity. (*Id.* at 12-13.) She explained Daniels could also receive the access code in person and the policy is in place to protect the integrity of the e-filing system. (*Id.*) Santarelli further addressed her expedited transcript request and told her the Superior Court will not have access to the record until transmitted by the trial court, directing her to contact the county about the transcript status.

(*Id*. at 12.) Daniels subsequently emailed Santarelli on August 26, 2026, explaining her New Jersey case deadlines were the same as the deadlines in her Superior Court case and requested the following accommodations:

> I am requesting the following accommodations to assist me with filing deadlines and understanding procedural requirements:
>
> - Reasonable brief extensions when disability-related difficulties cause me to miss a filing deadline.
> - Written notification if a required document is missing from a filing before the filing is rejected or an issue is deemed waived.
> - A short grace period to correct procedural errors or omissions resulting from my disability.
> - Written reminders of upcoming deadlines and filing requirements.
>
> These accommodations would help ensure that I can meaningfully participate in the proceedings and comply with the Court's requirements despite disability-related difficulties with processing written information and remembering procedural requirements.

(*Id*. at 11-12.)

In this civil action, Daniels brings Title II ADA claims against Defendants in their official capacities for denying her "a reliable and effective accommodation process," subjecting her "to improper directions, denied electronic communication," and a grievance process "that failed to prevent recurring access barriers," which have impaired her "meaningful access to court services and subjected her to a severe disability-related procedural disadvantage in time-sensitive interstate custody proceedings." (Compl. at 1, 7.) She requests prospective injunctive relief[2] requiring Defendants to, *inter alia*, provide the following "accommodations" so she can "meaningfully participate" in court proceedings "without disability-related procedural disadvantage": (i) effective electronic communication; (ii) information about "filing deficiencies

[2] Daniels makes clear throughout her Complaint she only seeks prospective injunctive relief and does not request money damages. (Compl. at 1, 6-8.)

and procedural problems . . . with sufficient specificity to allow [her] to understand what must be corrected and how to correct it;" (iii) written notice of denials for her requested accommodations with effective alternative accommodations; and (iv) consideration of her "disability-related processing limitations when multiple simultaneous proceedings or deadlines create a documented disability-related barrier." (*Id.* at 8-9.) She asserts that "[w]ithout prospective relief requiring effective electronic communication, notice of deficiencies, and reasonable procedural modifications, [she] remains at immediate risk of procedural default unrelated to the merits of her cases." (*Id.* at 7.)

## II. STANDARD OF REVIEW

The Court grants Daniels leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Daniels is proceeding *pro se*, the Court construes her

allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

Daniels brings Title II ADA claims against Defendants in their official capacities for denying her "a reliable and effective accommodation process," and subjecting her to "improper directions,[[3]] denied electronic communication," and a grievance process "that failed to prevent recurring access barriers," all of which have impaired her "meaningful access to court services and subjected her to a severe disability-related procedural disadvantage in time-sensitive interstate custody proceedings." (Compl. at 1, 7.) The proper defendant under a Title II claim is the public entity or an official acting in her official capacity.[4] *See Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. This provision provides a cause of action for disabled individuals who claim that they were denied access to state courts because of their disabilities. *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004) (recognizing that Title II of the ADA validly abrogates state sovereign immunity).

---

[3] The Court is unable to discern a viable claim ADA related to getting improper directions to the Family Court Help Center, especially considering the emails attached reflect she knew the proper place to go despite being told the wrong location. (*See* ECF No. 2-1 at 6-7.)

[4] Claims against individuals in their official capacity are "treated as if they are against the public entity" that employs the individual. *Talley v. Moore*, No. 22-1307, 2026 WL 2199478, at *4 (3d Cir. July 30, 2026) (quoting *Montanez v. Price*, 154 F.4th 127, 145 n.6 (3d Cir. 2025)).

To state a plausible claim under Title II of the ADA, a plaintiff must allege that "(1) [s]he is a qualified individual; (2) with a disability;[[5]] (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of h[er] disability." *Geness v. Cox*, 902 F.3d 344, 361 (3d Cir. 2018) (citations omitted). The element of discrimination by reason of disability can be met if a defendant failed to provide the plaintiff with reasonable accommodations for a disability. *See Montanez*, 154 F.4th at 148 (citing *Haberle v. Troxell*, 885 F.3d 170, 179-80 (3d. Cir. 2018)). When determining whether an accommodation is reasonable, courts consider "whether it alters the essential nature of the program or imposes an undue burden or hardship in light of the overall program." *Doe 1 v. Perkiomen Valley Sch. Dist.*, 585 F. Supp. 3d 668, 694-95 (E.D. Pa. 2022) (quoting *Helen L. v. DiDario*, 46 F.3d 325, 337 (3d Cir. 1995)). "A public entity need not make 'fundamental' or 'substantial' alterations to accommodate a disabled individual." *Id*. at 695 (citing *Alexander v. Choate*, 469 U.S. 287, 300 (1985)).

In support of her claims, Daniels identifies herself as "an individual with disabilities protected by Title II of the ADA, including Autism Spectrum Disorder, ADHD, and PTSD." (Compl. at 2.) Her disabilities "affect executive functioning, working memory, processing of dense written information, and her ability to manage multiple complicated and time-sensitive procedural requirements without reasonable accommodations." (*Id.*) Daniels requested

[5] To allege plausibly that she is a "qualified individual with a disability," Daniels must provide facts to show that she has a "disability," which is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual . . ." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. § 12101(2)(A).

accommodations from Defendants "including clear written communication, email notification, advance notice of filing deficiencies, adequate time to respond, and reasonable procedural accommodations when she is required to manage multiple complicated and time-sensitive court matters." (*Id*. at 3.) Specific to the claims against Pugliese, Daniels requested accommodations in the form of "email service of orders, advance notice of filing deficiencies, and brief extensions." (*Id*. at 5.) She also requested expediated rulings on her case and demanded confirmation that her filing was given to the judge directly. (ECF No. 2-1 at 3-4.) Turning to the allegations against Santarelli, Daniels "requested email access to case documents, expedited processing of a transcript because of the Children's Fast Track nature of the appeal, and email notification of case updates and filing deficiencies." (Compl. at 3.) She supplemented her request to Santarelli by asking for "reasonable" brief extensions when disability-related difficulties cause her to miss a filing deadline, written notification if a required document was missing, a short grace period to correct procedural errors or omissions resulting from her disability, and written reminders of upcoming deadlines and filing requirements. (ECF No. 2-1 at 11-12.) She does not allege the specific accommodations requested of Santos, but she requests prospective injunctive relief requiring all Defendants to, *inter alia*, provide the following "accommodations" so she can "meaningfully participate" in court proceedings "without disability-related procedural disadvantage": (i) effective electronic communication; (ii) information about "filing deficiencies and procedural problems . . . with sufficient specificity to allow [her] to understand what must be corrected and how to correct it;" (iii) written notice of denials for her requested accommodations with effective alternative accommodations; and (iv) consideration of her "disability-related processing limitations when multiple simultaneous proceedings or deadlines create a documented disability-related barrier." (Compl. at 8-9.)

There are several issues with Daniels's claims. First, it appears she requests email notifications and electronic access to her cases, as well as permission to submit her court filings via email.[6] (*Id*. at 3-4.) However, she contends she has an account with PACFile, which is Pennsylvania's e-filing system. (*Id*. at 4.) According to the Pennsylvania Court's website,[7] "PACFile is a service that provides the option to file documents with the courts electronically on both new and existing cases. At this time, filings can be submitted to the Supreme, Superior, Commonwealth, and certain Common Pleas courts." *See* https://ujsportal.pacourts.us/PACFile/Overview [last accessed: Oct 1, 2026]. Daniels does not allege that she was prevented from using the court's e-filing system, rather it appears she prefers to email court staff her documents instead of using the e-filing system. However, she states her accommodation request is for "electronic communication and the ability to submit and receive court documents by email because her disabilities make it difficult to reliably process and track complicated court procedures through ordinary in-person and paper-based processes." (Compl. at 4.) The e-filing system allows her to file documents without being in person, and it appears her request to file documents electronically has been accommodated since the Pennsylvania state courts have a system that permits e-filing of documents and electronic access to view cases. *See,*

[6] Daniels's also requested that she be allowed email access because her mailing address was protected by confidentiality requirements under VAWA, a criminal statute. (Compl. at 4.) However, VAWA protections are not a disability and not applicable to reasonable accommodations under the ADA. Furthermore, criminal statutes generally do not give rise to a civil cause of action. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"). Numerous courts have held that the VAWA, 18 U.S.C. §§ 2261-2262, does not provide a private right of action. *See, e.g., Humphrey v. Pa. Ct. of Common Pleas of Philadelphia*, 462 F. Supp. 3d 532, 535 n.2 (E.D. Pa. 2020) (collecting cases).

[7] The Court may take judicial notice of the information published on a government website. *See Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017).

*e.g., Selene v. Legislature of Idaho*, 514 F. Supp. 3d 1243, 1257-58 (D. Idaho 2021) (explaining that plaintiff cannot prevail under Title II of the ADA where a reasonable accommodation was provided to the plaintiff); *Hiramanek v. California Jud. Council*, No. 15-4377, 2016 WL 6427870, at *2 (N.D. Cal. Oct. 31, 2016) ("Nor has plaintiff explained how defendants' existing filing mechanisms are insufficient to accommodate his alleged disabilities."), *aff'd sub nom. Hiramanek v. Jud. Council of California*, 754 F. App'x 580 (9th Cir. 2019). To the extent Daniels asks for the Court to accept filings by email as an alternative to this system, her request appears unreasonable; the ADA requires public entities to make their systems accessible to individuals with disabilities, not to create new systems based on their preference.[8]

Next, Daniels appears to request blanket allowance of motions for extensions of time to file her responses and to fix deficiencies in her court filings as an accommodation for her disabilities, as well as expedited rulings on her motions.[9] (*See* Compl. at 3-4; ECF No. 2-1 at 3-4.) Such a claim is baseless. "Title II does not require States to employ any and all means to make judicial services accessible or to compromise essential eligibility criteria for public

---

[8] Notably, federal courts generally do not accept filings by email when other electronic means of participation is available. *See, e.g.*, *Gueltzau v. Warehime*, No. 24-430, 2026 WL 595912, at *4 (D. Neb. Mar. 3, 2026) (rejecting ADA request because, among other things, "[c]larification assistance when Court notices are ambiguous can be obtained when necessary by filing a motion for clarification. Reasonable extensions when Plaintiff's medical condition affects deadlines will be provided upon motions showing good cause."); *Doe v. Young*, No. 23-02255, 2024 WL 6991090, at *3 (D. Colo. Nov. 8, 2024) ("[T]he Court already mails every single filing to Defendant. Neither opposing counsel nor the Court can be expected to go beyond these measures; Defendant Young may access the Docket through PACER as he pleases"); *Watson v. Veterans Evaluation Servs.*, No. 23-1109, 2023 WL 6143361, at *2 (D. Kan. Sept. 20, 2023) ("[A]ppearing at a court hearing via email would result in a fundamental alteration in the nature of a hearing. Additionally, an equally effective means of communication is available.").

[9] Daniels does not allege in her Complaint that she actually filed a motion of extension of time as an accommodation and such request was denied, only that she sought permission for extensions at her leisure whenever she may need them in the future throughout the course of her cases.

programs." *Lane*, 541 U.S. at 511-12. Rather, "[i]t requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided" and that "afford[s] to all individuals a meaningful opportunity to be heard in [the states'] courts." *Id.* "Requiring courts to grant motions or permit meritless civil cases to proceed is not a *reasonable* accommodation under the ADA." *Alvarez v. Pennsylvania*, No. 25-4941, 2026 WL 499936, at *3 (E.D. Pa. Feb. 23, 2026) (citation omitted); *see also Henderson v. Morris*, No. 23-0346, 2025 WL 3248722, at *8 (E.D. Tex. Nov. 20, 2025) (denying plaintiff's request to grant her motion for leave to file an amended complaint as an ADA accommodation because "[t]he ADA does not require the court to grant or deny a motion or take any judicial action" (citation omitted)). To the extent that Daniels contends that she should have unlimited entitlements to having extensions of times or other motions being granted and such rulings be expedited in her cases as an accommodation for her disabilities, such a claim is baseless. Notably, nothing prevents her from filings motions in any individual case, if justified by the circumstances, for judicial consideration. Further, nothing explains why expedited consideration of Daniels's filings would be required *as an accommodation for a disability*.

Daniels also requests Defendants to notify her in writing and give her advance notice when a required document is missing, send reminders of upcoming deadlines and filing requirements, and inform her about filing deficiencies and procedural problems to allow her to understand what must be corrected and how to correct it. (Compl. at 3, 5, 8.) However, it is not reasonable to impose on Defendants, or any court employee for that matter, the "undue burden" to inform Daniels of deficiencies or procedural issues in her case and/or provide how to fix them. Self-represented litigants, like Daniels, are not exempt from understanding and following statewide and local Rules of Court. *See Moss v. Moss*, 358 A.3d 684 (Pa. Super. Ct. 2026)

(holding that "it is clear that self-represented litigants are held to the same standards as counsel; [plaintiff] should not be afforded any leeway for his lack of knowledge of legal process or procedure"); *see also* https://www.pacourts.us/learn/representing-yourself [last accessed: Oct. 1, 2026]. Further, courts cannot give legal advice or provide legal assistance to litigants, even those who are self-represented. *Mala,* 704 F.3d at 244 (finding that the general rule is "courts need not provide substantive legal advice to pro se litigants."); *see also Pliler v. Ford,* 542 U.S. 225, 231 (2004) ("Requiring district courts to advise a *pro se* litigant ... would undermine district judges' role as impartial decisionmakers."). As already stated, public entities—such as state and federal courts—are not required to "make 'fundamental' or 'substantial' alterations" in their programs or services "to accommodate a disabled individual." *Doe 1,* 585 F. Supp. 3d at 695 (citing *Alexander*, 469 U.S. at 300). Moreover, if the accommodation creates an undue burden on the courts, it is not reasonable. *See id.* at 694-95 (explaining that to determine whether an accommodation is reasonable, courts consider "whether it alters the essential nature of the program or imposes an undue burden or hardship in light of the overall program." (quoting *Helen L.*, 46 F.3d at 337)). Daniels's request for Defendants, or other court staff, to provide reminders of her deadlines and give advance notice with explanations or instructions as to the deficiencies in her filings and how to fix the errors are not only unduly burdensome, but would require substantial and fundamental alterations to state court procedures. Thus, Daniels's accommodation requests are not reasonable accommodations under the ADA. *See Alvarez*, 2026 WL 499936, at *4 (concluding that disabled *pro se* litigant's request for "directions on how to fix [his] errors" in state court case was not reasonable accommodation and would be undue burden on court); *see also*, *Long v. Howard Univ.*, 439 F. Supp. 2d 68, 75 (D.D.C. 2006) (holding a disabled individual is not entitled under the ADA "to whatever modification he thinks might

accommodate his limitations. Nor is he entitled to obtain an advantage over his non-disabled peers. Rather, the ADA mandates that places of public accommodation make only those reasonable modifications that are *necessary* to give a disabled individual the same opportunity to obtain the offered benefit that he would have had were it not for the limitations caused by his disability—and, even then, only to the extent that the necessary modifications would not fundamentally alter the nature of that benefit." (citing 42 U.S.C. § 12182(b)(2)(A)(ii))).

Daniels's allegations also do not support an inference that she was excluded or denied the ability to participate in or benefit from the public service of the court's programs, services and activities, including in judicial proceedings or denied access to the Pennsylvania courts. Notably, she does not allege any facts illustrating that she was prevented from participating in such programs *because of her* disabilities. In other words, her allegations that she was denied meaningful access to the courts is entirely conclusory. To the contrary, her Complaint demonstrates that she has several active cases she is currently pursuing, including "an active appeal in the Superior Court of Pennsylvania, Docket No. 2141 EDA 2026, involving a time-sensitive custody matter." (Compl. at 3.) Her active involvement in these cases suggests she has and had meaningful access to the Pennsylvania state courts. *See, e.g., Bedford v. Michigan*, 722 F. App'x 515, 520 (6th Cir. 2018) (affirming dismissal of ADA Title II claim where the plaintiff participated in the proceedings, filed motions, and attended hearings); *McCauley v. Georgia*, 466 F. App'x 832, 837 (11th Cir. 2012) (*per curiam*) (affirming dismissal of ADA Title II claim where the plaintiff "was able to access the court and have her case heard on the merits" after filing motions that were ultimately denied). The fact that Daniels may not be satisfied with the outcome of her cases, how the e-filing system works to notify her about the cases, the fundamental procedures of how courts operate, or how long it takes for rulings to be issued, do

not equate to an ADA claim without allegations that she was excluded from a service provided by Defendants and "that such an exclusion was by reason of [her] disability." *Geness v. Admin. Off. of Pennsylvania Cts.,* 974 F.3d 263, 278 (3d Cir. 2020) (internal quotations and citations omitted); *see also Kennedy v. N.J. Ct. Sys.*, No. 24-2826, 2026 WL 323878, at *3 (3d Cir. Feb. 6, 2026) (*per curiam*) (affirming dismissal of Title II claim as conclusory where plaintiff alleged she was denied access to the courts because courts "made it too difficult to access" and plaintiff failed to allege that she was "denied assistance *on the basis [of] her* disability" (emphasis added)).

In sum, Daniels has not plausibly alleged in her Complaint that she was denied a *reasonable* accommodation for her disabilities, or that she was discriminated against or denied access to the courts based on her disability. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."); *see also McDonald-Witherspoon v. City of Philadelphia*, No. 17-1914, 2017 WL 3675408, at *9 (E.D. Pa. Aug. 25, 2017) (dismissing ADA Title II claim because complaint did not contain any facts showing that plaintiff was discriminated against because of his disability).

## IV. CONCLUSION

For the reasons stated, the Court will grant Daniels leave to proceed *in forma pauperis* and dismiss her Complaint without prejudice. Out of an abundance of caution, Daniels will be given an opportunity to file an amended complaint in the event she can cure the defects the Court has identified in her claims. Her request for a temporary restraining order will be denied since she cannot demonstrate success on the merits of her claims. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that [s]he is likely to

succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest.”).

An Order follows, which provides further guidance as to amendment.

**BY THE COURT:**

**MARY KAY COSTELLO, J.**